UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE EXTRADITION OF

06-M-1146

JOHN A. WASHINGTON, A PROVISIONAL ARRESTEE

APPEARANCES:        TERRENCE A. FLYNN
                    UNITED STATES ATTORNEY
                    Attorney for the Government
                    PAUL J. CAMPANA
                    Assistant United States Attorney, of Counsel
                    138 Delaware Avenue
                    Buffalo, New York    14202

                    CONNORS & VILARDO
                    Attorneys for John A. Washington
                    AMY C. MARTOCHE, ESQ, of Counsel
                    1020 Liberty Building
                    Buffalo, New York    14202

## JURISDICTION

This matter is before the court pursuant to 28 U.S.C. § 636(a)(1) and 18 U.S.C. § 3184.  Presently before the court is the Provisional Arrestee's motion ("Washington's motion") to dismiss the Complaint for provisional arrest, filed December 29, 2006 (Doc. No. 8).

## BACKGROUND and FACTS[1]

On December 18, 2006, a complaint ("the Complaint") requesting the provisional arrest of Mr. John A. Washington, a United States citizen who was located within this district ("Washington" or "Arrestee"), pursuant to the Extradition Treaty with France, U.S.-Fr., Apr. 23, 1996, 2179 UNTS 341, 1996 WL 905553 ("the Treaty" or "the

---

[1]  Taken from the pleadings and papers filed in this proceeding.

Extradition Treaty with France"), in force as of February 1, 2002,[2] was presented to the undersigned by an Assistant United States Attorney, Mr. Paul J. Campana, of this district ("Mr. Campana" or "the Government Attorney").   In the Complaint, Mr. Campana averred that Washington had, on July 24, 2006, assaulted one Colin Hall ("Hall") while at a night club in St. Tropez, France ("the night club"), by striking Hall in the head with a bottle.  Complaint ¶ 3.  According to the Complaint, Washington and Hall are United States citizens and students at Oxford University, England.  *Id.*  Allegedly, the assault was precipitated by Washington's and Hall's competing interests in a female, also a United States citizen and an Oxford student, who was present at the night club and witnessed the assault.  *Id.*  Following Washington's arrest and later release by French police, Hall's condition quickly deteriorated resulting in a coma for the next few weeks. *Id.*

The Government Attorney also averred that witness statements, including one from the female student, obtained by French law enforcement authorities, specifically identified Washington as Hall's assailant.  *Id.*  The Complaint further states that such an assault constitutes an act of violence in violation of Articles 222-12, 222-44, 222-45 and 222-47 of the French Penal Code ("the French Penal Code" or "the Code") and, as such, qualifies as a basis for extradition under the Treaty.[3]  Complaint ¶ 1.  Additionally, the Government Attorney represented that, based on the assault, Washington was the

---

[2] Although signed at Paris, France on April 23, 1996, the Treaty was not ratified by the Senate and, thus was not entered into force, until February 1, 2002.  Extradition Treaty with France, U.S.-Fr., Apr. 23, 1996, 2179 UNTS 341, 2004 WL 2854469.  A copy of the text of the Treaty is attached to Washington's motion.  Furthermore, as no parallel citation to the Statutes at Large is yet available for the Treaty, references to the Treaty are to the relevant Treaty Article(s) to this case.

[3] The Complaint did not include copies of the Code or Treaty.

subject of an international arrest warrant issued by a French judicial officer in Nice, France on July 27, 2006, although a copy of the warrant was not included with the Complaint. Complaint ¶ 2. The Complaint also represented that the French government intended to seek extradition of Washington within 60 days of his warrant as required by Article 13 of the Treaty. Complaint ¶ 7.

Article 13 of the Treaty authorizes the provisional arrest of a person located in the requested state, *i.e.*, pending receipt of a formal request for extradition by the requesting party pursuant to Article 10 of the Treaty, for a 60-day period after the date of the person's provisional arrest, upon a description of the person to be arrested, information regarding the person's location in the requested state, a "brief statement of the facts of the case, including the location and approximate date of the offense," a "description of the laws violated," the existence of any warrant of arrest for the person, and a statement that if the person is provisionally arrested, a request for extradition for the person will follow. Treaty, Art. 13[2]. Such requests are to be based upon communications between the United States Department of Justice and the Ministry of Justice of the French Republic using either diplomatic channels or facilities of the International Criminal Police Organization ("Interpol").[4] Treaty, Art. 13[1]. Finding the Complaint to be in compliance with Article 13, a warrant for provisional arrest for Washington pending timely receipt of formal extradition papers was issued by the undersigned on December 18, 2006.

Following his apprehension by United States Deputy Marshals at the

---

[4] France's failure to issue such formal extradition papers within 60 days following Washington's arrest results in discharge from custody but does not preclude later arrest upon receipt of such papers by the United States. Treaty Art. 13[4], [5].

Chautauqua Institution, located within this district, Washington appeared, on December 21, 2006, with counsel before the undersigned on return of the warrant.  At that time, Washington conceded there was no issue of identity, however, Washington requested an opportunity to move to dismiss the Complaint and for release pending further proceedings.  The court granted Washington's request to file the instant motion but found no special circumstances warranted the granting of bail.  Accordingly, Washington was remanded to the custody of the United States Marshals Service under the provisional arrest warrant in compliance with Article 13 of the Treaty.

As noted, Washington's motion, filed December 29, 2006 (Doc. No. 8) requested dismissal of the Complaint and, alternatively, discovery.  The motion was supported by the Affidavit of Amy C. Martoche, Esq. ("Martoche Affidavit") and attached exhibits ("Arrestee's Exh(s). __"), including copies of the provisional arrest warrant, the Complaint, the Treaty, and relevant provisions of the French Penal Code.  In opposition, the Government filed, on January 5, 2007, the Affidavit of Paul J. Campana, Assistant United States Attorney ("Campana Affidavit") to which are attached as exhibits photocopies of documents, including a copy of the international arrest warrant against Washington for the alleged assault together with the request of the French prosecutor for Washington's provisional arrest, corroborating the alleged events underlying the French arrest warrant and the Complaint.  ("Government Exh(s). __") Following oral argument, conducted January 8, 2007, Washington's motion was denied. Washington's alternative request for discovery, specifically for production of an authenticated copy of the French arrest warrant, was granted in part, and dismissed without prejudice to abide further extradition proceedings.

4

## DISCUSSION

Washington raises five contentions in support of his motion.  First, Washington contends that the Complaint fails to demonstrate probable cause, as required for the Fourth Amendment, to support his provisional arrest.  Martoche Affidavit ¶¶ 9-15. Second, Washington asserts that the Complaint fails to sufficiently allege an extraditable offense under the Treaty to authorize a provisional arrest under Article 13 of the Treaty including that the Complaint fails to allege an offense punishable by at least one year imprisonment in France as required under Article 2 of the Treaty.  *Id.* ¶¶ 26-28; 32.  Third, Washington contends he is not a fugitive from French justice and therefore not subject to provisional arrest.  *Id.* ¶¶ 35-40.  Fourth, Washington asserts the Complaint is defective because it failed to include, as required by Article 10[3](b), an authenticated copy of the international arrest warrant for Washington. *Id*. ¶¶ 14-16. Finally, Washington contends the Complaint fails to satisfy the prerequisite for a provisional arrest under Article 13 of the Treaty that such requests are limited to a "case of urgency." *Id*. ¶ 33.

First, assuming that, as Washington contends, the Fourth Amendment is applicable to a complaint for provisional arrest under an extradition treaty to which the United States is a party the factual statements contained in the Complaint, Complaint ¶ 3, as sworn to by the Government Attorney, amply demonstrate probable cause to believe Washington committed an extraditable offense, and is thus subject to

provisional arrest under the Treaty.[5]   Although not specifically raised by Washington,

Article 10[3](b), setting forth the requirements for a formal request for extradition by

France of a person within the United States who is subject to prosecution in France,

requires that in addition to a copy of the French arrest warrant for such person, the

request be supported by "such information as would justify the committal for trial of the

person if the offense had been committed in the United States."   However, no similar

requirement exists for a provisional arrest under Article 13 of the Treaty.   It is well-

established that in the United States such a committal must be based upon a finding of

probable cause.   *See*, *e.g.*, Fed. R. Crim. P. 4 (requiring affidavit in support of arrest

warrant to be based on "probable cause"); Fed. R. Crim. P. 5(b) (requiring showing of

"probable cause" to support complaint in case of warrantless arrest); Fed. R. Crim. P.

5.1(e) (requiring finding of "probable cause" to hold defendant for further, *i.e.*, grand

jury, proceedings); *United States v. Miller*, 116 F.3d 641, 669 (2d Cir. 1997) ("A grand

jury's indictment is based on probable cause, not on a preponderance of the evidence .

. ..").

In *Caltagirone v. Grant*, 629 F.2d 739 (2d Cir. 1980), the court found it

unnecessary to decide whether the Fourth Amendment applied to a request for

provisional arrest, instead finding that the relevant extradition treaty between the United

States and Italy included a provision, similar to Article 10[3](b) of the Extradition Treaty

with France, and therefore required probable cause be demonstrated to support the

---

[5]  *See Austin v. Healey*, 5 F.3d 598, 600 (2d Cir. 1993) (on habeas review of magistrate judge's
extradition order court will determine whether magistrate judge had jurisdiction, whether offense charged
is extraditable under relevant treaty, and "whether there was sufficient evidence to support the finding of
probable cause to extradite.") (citing cases).

provisional arrest in that case.  *Caltagirone, supra*, at 748 (citing cases).[6]  Thus, if the

Complaint establishes probable cause for Washington's provisional arrest, pursuant to

Article 13, it is unnecessary to decide whether probable cause is required under the

Fourth Amendment or the Treaty.

Here, the Complaint unambiguously states, "on information and belief," that

Washington struck the victim, Hall, with a bottle over the attentions of a woman who

was a witness to the assault on July 24, 2006 at a night club in St. Tropez, France and

identified Washington as Hall's assailant.  Complaint Introduction and ¶ 3.  Probable

cause requires that the stated information in support of an arrest warrant be sufficient to

cause a reasonably prudent person to believe a crime was committed by the accused.

*Berger v. New York,* 388 U.S. 41, 55 (1967); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d

Cir. 2006).  In making this determination, judges are to evaluate the totality of the

circumstances presented, *Illinois v. Gates*, 462 U.S. 213, 238 (1982), in determining

whether there is a "substantial basis" for the issuance of the warrant.  *Id.* at 239.

Additionally, it is well-established that hearsay information, *Franks v. Delaware*, 438

U.S. 154, 165 (1978), including information received from other law enforcement

agents, may be relied upon in reaching the probable case determination.  *United States*

*v. Ventresca*, 380 U.S. 102, 110-11 (1965) (citing *Jones v. United States*, 362 U.S. 257,

269 (1960)); *Panetta, supra*, at 395 (arresting officers may rely on determinations of

---

[6] Washington relies on *Rosado v. Civiletti*, 621 F.2d 1179 (2d Cir. 1980) as authority for his contention that the Fourth Amendment applies to foreign extradition requests.  Martoche Affidavit ¶ 12. However, such reliance is misplaced as in *Rosado* the court addressed the applicability of due process protections, not the Fourth Amendment's probable cause requirement, to detention for foreign prosecutions, *Rosado, supra*, at 1195; in *Caltagirone, supra*, the Second Circuit stated that the language in *Rosado* implying such applicability was "dictum." *Caltagirone,* 621 F.2d at 748.

grounds for arrest by fellow officers) (citing cases).  *See also Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981) (hearsay and "other excludable evidence" are admissible in extradition proceedings).  Further, is it "well-established" that statements of a victim and eye-witnesses to an alleged crime constitute probable cause, absent reasons to doubt the veracity of such sources.  *Panetta,* 460 F.3d at 395.

As discussed, Discussion, *supra*, at 5, Article 2 of the Treaty authorizes extradition for acts punishable for a period of incarceration of at least one year. Further, as stated, Discussion, *supra*, at 3, Article 13[2](d) of the Treaty requires for provisional arrest a "description of the laws violated" by the provisional arrestee.  Article 222-11 of the French Penal Code provides that "[a]cts of violence causing a total incapacity to work for more than eight days are punishable by three years imprisonment and a fine of 45,000 euros.  Government Exh. J at 2.  As relevant to the Complaint, Article 222-12 of the Code provides incarceration of five years and a fine of 75,000 euros if the conduct is an offense "defined under Article 222-11" of the Code where committed "with use . . . of a weapon."  (underlining added).  *Id.*  Articles 222-44, 222-45 and 222-47 of the Code provide additional penalties not relevant to the issues presented on the instant motion.  *Id.*

In this case, the Complaint plainly avers that Washington's assault on Mr. Hall violated Articles 222-12, 222-44, 222-45 and 222-47 of the Code.  Complaint ¶ 1. Washington asserts that none of these provisions define an act of violence, as stated to in Article 222-11, to which such offenses alleged in the Complaint relate.  Martoche Affidavit ¶ 30.  Washington therefore contends the Complaint insufficiently charges an extraditable offense under the Treaty. *Id*. ¶ 31. However, the allegation of facts stated in

the Complaint, fairly read, demonstrate there exists a reasonable likelihood that Washington committed a serious assault involving an act of violence with a weapon, the bottle, as that term is used in the French Penal Code,[7] and, as such, is punishable by at least one year, *i.e.*, five years, imprisonment under the Code pursuant to Article 222-12 as stated in the Complaint.

Although the Government Attorney does not specifically state the basis for his "information and belief" as to the particular facts asserted in paragraph 3 of the Complaint, a reading of the entire Complaint shows that the information, including the statements of eye-witnesses and the victim, was received through United States-France diplomatic channels, or communications between the United States Department of Justice and the French Ministry of Justice, developed by French law enforcement officials who investigated the matter.  *See, e.g.*, Complaint ¶ 7 ("I [Mr. Campana] am informed through the official channels . . ..").  The court thus finds that such hearsay information, including the statements of the victim, Hall, and witnesses to the assault, was reasonably relied upon by the Government Attorney and constituted reasonably trustworthy information demonstrating probable cause to believe Washington committed a crime of violence punishable by at least one year imprisonment under French law.  The particulars of the French criminal investigation are detailed in the request for provisional arrest submitted to the Department of Justice by the French prosecutor.  Government Exhs. I and J.

---

[7] Violence is defined as the "[u]njust use of force, . . . usually accompanied by fury . . . [or] physical force unlawfully exercised with the intent to harm."  Black's Law Dictionary 1564 (7th ed. 1999). Washington has failed to provide any contrary definition under applicable French law.  Absent such information the court may fairly presume the definition of "violence" in French to be similar to that in English.

The court further finds that the facts of the investigation of the assault by French authorities, as communicated through the Justice Department to the Government Attorney, constitutes "a substantial basis" on which to credit such hearsay. *Jones, supra*, at 272. Indeed, as noted, the Treaty itself contemplates official reliance upon such shared information in obtaining provisional arrest warrants. Treaty Art. 13[1]. *See Panetta, supra*. Thus, regardless of whether probable cause for a provisional arrest pursuant to the Treaty is required by either the Fourth Amendment, or even under Articles 10 or 13 of the Treaty, the facts related in the Complaint demonstrate that Washington's provisional arrest was supported by probable cause. Additionally, the Campana Affidavit, filed in opposition to Washington's motion, provides a plethora of information, including a copy of the French arrest warrant and to the French court's official request for Washington's provisional arrest, giving details of the assault and the extent of Hall's life-threatening injury, including statements of the victim and witnesses, strongly corroborating this conclusion. Government Exhs. H, I and J. Accordingly, there is no merit to this ground for Washington's motion.

The second basis for Washington's motion is that the Complaint fails to sufficiently state an offense subject to extradition under the Treaty. Martoche Affidavit ¶ ¶ 26-28, 32. As discussed, Discussion, *supra*, at 5, the Treaty specifies that conduct punishable by imprisonment of at least one year for such offenses constitutes an extraditable offense. Treaty Art. [2](1). Further, as stated in the Complaint, under the French Code, an act of violence with a weapon is punishable by up to five years imprisonment. Complaint ¶ 1; Code Art. 222-12. Reading the Complaint in conjunction with the relevant French Code provisions therefore leads to the conclusion that

Washington is charged in France with an act of physical violence, in the nature of a serious assault, upon a person, Hall, with a weapon, *i.e.*, a glass bottle, for which Washington is subject to incarceration of at least one, and more probably, five years of imprisonment.  The Complaint's failure, as Washington asserts, to provide more detailed elements of the offense of an act of violence, as used in Article 222-11, (assuming such additional elements are enumerated in the Code) is immaterial.  As such, the Complaint sufficiently complies with the requirements of Article 13[2](d) of the Treaty which requires a "description of the law [Code provisions] violated," and this ground for Washington's motion is without merit.

Washington's third objection to the Complaint is that he is not a fugitive from French justice.  Martoche Affidavit ¶ ¶ 35-40.  Specifically, Washington asserts that since the alleged assault on July 24, 2006, he has attempted through counsel to remain available to the French police and courts.  *Id.* ¶ 38.  However, nothing in the text of the Treaty requires a showing that a person for whom provisional arrest is sought be a fugitive, *i.e.*, a person seeking to avoid apprehension.  In fact, the word "fugitive" does not appear in the text of the Treaty.  Washington points to nothing in the Treaty requiring that in addition to the requirements of Article 13, a request for provisional arrest demonstrate the person sought is a fugitive.  Nor does Washington cite any caselaw to support this contention.  Moreover, the term "fugitive" is broadly defined to include both a person who flees a jurisdiction to avoid prosecution, as well as one who seeks to evade prosecution by hiding from authorities.  Black's Law Dictionary, *supra*, at 680.

It is undisputed that Washington left France after the charges against him were

filed, and that he failed to surrender himself to the subsequently issued French arrest warrant of which he became aware.   Additionally, according to French authorities, Washington publically stated "he had become a <u>fugitive</u> on [his] attorneys' advice." Government Exh. I at 2 (underlining added).   Further, in the opinion of the French prosecutor who is seeking the provisional arrest warrant, as of December 14, 2006, Washington was "still on the run."   Government Exh. I at 3.   According to French prosecutors, in October 2006, the French court urged Washington, through his attorney, to surrender to the warrant but Washington failed to do so.   Government Exh. J at 2. As such, Washington is a fugitive from French justice, and his objection to provisional arrest on this basis is without merit.

Nor is there any substance to Washington's contention that the Complaint is defective for failure to include an authenticated copy of the warrant as required by Article 10[3](b).   Martoche Affidavit ¶ 14.   The Treaty only requires an authenticated copy of the warrant for the person's arrest as to a person for whom extradition is requested by France based on pending charges in France.   Treaty Art. 10[3](b).   Article 13, in authorizing provisional arrests, however, does not include any similar requirement.   Treaty Art. 13.   Washington cites no authority to the contrary.   In any event, while the Complaint did not include the underlying French arrest warrant, a copy of such warrant dated, July 27, 2006, is attached (albeit unauthenticated) to the Campana Affidavit.   Government Exh. H.   Accordingly, the lack of an authenticated French arrest warrant does not support Washington's motion.

Finally, Washington contends the Complaint fails to establish any "urgency" for Washington's extradition.   Specifically, Washington asserts that a showing that his is a

case of urgency is required by Article 13.  Martoche Affidavit ¶ 33.  Article 13 of the

Treaty authorizes a provisional arrest in "case of urgency."  Treaty Art. 13[1].  Whether

the existence of a case of urgency as referred to in Article 13[1] is a predicate

circumstance to be determined within the discretion of the requesting party and, thus,

not a factor subject to judicial consideration before issuance of the provisional warrant,

has yet to be addressed by the Second Circuit.  *See Caltagirone v. Grant, supra*, at 744

n. 10 (granting habeas corpus relief on other grounds, thereby reversing order for

provisional detention of provisional arrestee, and declining to reach question as to

whether government made sufficient showing of "urgency" to warrant detention pending

extradition).  Nevertheless, other caselaw indicates that whether there is sufficient

"urgency" to justify a provisional arrest pending formal extradition depends on official

findings that are to be made by both the requesting and requested parties to the

extradition treaty.  *See*, *e.g.*, *Matter of Extradition of Russell*, 805 F.2d 1215, 1218 (5th

Cir. 1986) (whether "urgency" warranted provisional arrestee's confinement pending

extradition "turns on the perception of the requesting and requested countries"); *United

States v. Leitner*, 784 F.2d 159, 161 (2d Cir. 1986) ("'Urgency' is not merely temporal in

nature.  Rather, the term involves other considerations including the importance to the

country seeking extradition and foreign policy concerns of the United States."); *contra,

United States v. Messina*, 566 F.Supp. 740, 744-45 (E.D.N.Y. 1983) (rejecting

government's contention that "determinations of urgency are discretionary executive

judgments which are so bound up with the foreign affairs powers as to be

nonjusticiable.").  In any event, the record in the instant case establishes that both

French and United States officials determined, as provided for by Article 13[1], that

sufficient urgency warranted Washington's detention pending extradition based on the serious nature of the assault, the fact that Washington fled France following the incident, has refused French judicial requests to surrender to the French arrest warrant, and has not kept the French authorities advised of his whereabouts.

For example, an article appearing in The Oxford Student publication states that shortly after the incident, Washington fled the scene, but was apprehended by security personnel at the night club and arrested by French police who released Washington before the seriousness of Hall's injuries became known.  Ed Hancox, *Bludgeoned in St. Tropez*, The Oxford Student, Oct. 3, 2006, at 4, Government Exh. C-1.  Despite repeated requests from acquaintances of both Washington and Hall to do so, Washington never surrendered to French authorities.  Statement of Laura Clegg, Government Exh. A; Statement of Franz-Ferdinand Buerstedde, Government Exh. B. Rather, immediately following his release on the French charges, Washington traveled to Milan, Italy where, on July 27, 2006, the same day the French warrant was issued, Washington boarded an airplane and flew to the United States, arriving in Washington, D.C.  Government Exh. E.  In another statement submitted to the court, Mr. Raphael Schachter ("Schachter"), an attorney practicing in criminal law in France, states that he is the brother-in-law of Harry Bloomfield ("Bloomfield"), with whom Washington had been staying while vacationing in France until the assault.  Statement of Raphael Schachter, Government Exh. C-2 ¶ 1.  Schachter states that shortly after the assault, at Bloomfield's request, Schachter spoke with Washington, advised Washington, who had "suddenly departed" Bloomfield's home immediately after the assault, Campana Affidavit ¶ 6, that under the circumstances, Washington did not have "a multiplicity of

choices," that the French authorities were searching for Washington, and urged Washington to surrender to the authorities.  *Id.* ¶ 3.  It is thus reasonable to infer that Washington abruptly interrupted his vacation in France and returned to the United States in order to frustrate his prosecution in France despite his awareness that he should surrender to the French warrant.

A search of the premises where Washington was staying at the Chautauqua Institution at the time of his arrest on December 18, 2006, revealed several items further establishing the requisite degree of urgency for Washington's provisional arrest. Particularly, personal identification cards indicate Washington used various dates of birth, specifically 1963 on his California Driver License, and 1981 on his University of Oxford International Student Identification Card.  Government Exh. D.  In a handwritten letter addressed to one "Mr. Diddy," Washington claim to be 26 years old.  Government Exh. F.[8]  Further, an airline ticket issued in Washington's name indicates that Washington flew from Milan, Italy to Washington, D.C. on July 27, 2006, three days after the assault despite being advised to surrender by Mr. Schachter.  Government Exh. E.  In a typewritten letter addressed to "Paula," Washington admits he "almost killed someone" with "a really well-placed punch" which Washington later heard "landed someone in the hospital," yet claims the assault occurred after Washington "drank someone else's drink to which Rohypnol had been added (the date rape drug . . . )" and did not become aware of his surroundings until 12 hours later.  Government Exh. G. Washington's use of inconsistent or "fuzzy" identification, as characterized by the

---

[8]  Based on his appearance in court, Washington presented as a person well beyond 26 years of age.

French prosecutor, Government Exh. I at 2, and far-fetched assertions to mitigate culpability do not exhibit much inclination to respond to the French warrant.

Finally, even documents presented by Washington at his appearance in this court on December 21, 2006 belie Washington's claim that, after leaving France, he was evading detection or extradition by French authorities.  In particular, Washington submitted to the court a letter from his purported French attorney, Mr. Rizzo, in which the attorney states that on October 20, 2006, the attorney forwarded to the "Pre-Trial Investigation Judge" assigned to the matter in France "a letter from Mr. John Washington, in which he explained that he had attempted several times in vain, to contact the French courts and that he was willing to appear before the judge and be heard, so as to be able to defend his right."  Arrestee's Hearing Exh. A at 2. Washington also asserted in the letter that he "gave [to the French tribunal] a valid administrative address (his address at Oxford), as well as an election of domicile address with French lawyer (Maître Patrick Rizzo)," as required by French criminal rules of procedure.  Id.  A copy of said letter was presented by Washington at the December 21, 2006 court appearance, with only Washington's "Administrative" address at Oxford University listed, along with Washington's statement that he had "elected domicile in M. Patrick Rizzo's Office."  Arrestee's Heaing Exh. B.  On the other hand, French authorities determined that the October letter Washington sent to the French court was electronically mailed from Washington, D.C.  Government Exh. J (English Translation) at 4.  Significantly, nowhere within either letter is there any indication of Washington's true whereabouts in the United States nor did Washington proffer at the hearing that since returning to the United States he had attempted in any way to keep French

authorities informed as to his correct residence.

That Washington returned to the United States after the warrant was issued for the violent assault and failed to inform the French authorities of his true location despite being aware of the seriousness of the charges and being professionally advised to surrender to the French warrant, and was later discovered in this district under furtive circumstances, is sufficient to constitute a case of urgency and the need to obtain a provisional warrant under Article 13 of the Treaty.  As the French prosecutor observed, as of December 14, 2006, based on the scenario involving Washington's whereabouts since the July 2006 assault, Washington was "still on the run."  Government Exh. I at 3. Washington cites no authority requiring a contrary interpretation.  Under the circumstances presented, both United States and French officials had ample grounds to believe provisional arrest was urgently required, *Matter of Russell, supra*, to prevent Washington's further avoidance of detection and to facilitate his involuntary return to France to deal with the charges against him in that country.  Accordingly the court finds no merit in this ground for Washington's motion.

## CONCLUSION

Based on the foregoing, Washington's motion to dismiss (Doc. No. 8) is DENIED; the alternative request for discovery is GRANTED in part and DISMISSED in part without prejudice.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: January 12, 2007
       Buffalo, New York